UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CYNTHIA FLETCHER-HOPE                                                                 Plaintiff

v.                                                                    Civil Action No. 3:18-cv-00469-RGJ

LOUISVILLE-JEFFERSON COUNTY                                                       Defendants
METRO GOVERNMENT, ET AL.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia Fletcher-Hope brings this action against Defendants Louisville-Jefferson County Metropolitan Government (the "Metro Government"), Captain Darrell Goodlett, Lieutenant Timothy Huber, Officer Kenneth Bennett, and unknown defendants alleging sexual harassment under KRS § 344.010, *et seq.* (Count One), retaliation under KRS § 344.010, *et seq.* (Count Two), racial discrimination under KRS § 344.010, *et seq.* (Count Three), violation of Fletcher-Hope's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Section 10 of the Kentucky Constitution (Count Four), assault and battery (Count Five), age discrimination under KRS § 344.010, *et seq.* (Count Six), gender discrimination under KRS § 344.010, *et seq.* (Count Seven), negligent supervision (Count Eight), and defamation (Count Nine). [DE 1-2, Compl. at ¶¶ 21–83]. The Metro Government now moves to dismiss Fletcher-Hope's claims against it under Federal Rule of Civil Procedure 12(b)(6). [DE 5]. The matter is ripe for judgment. Having considered the parties' filings and the applicable law, the Court **GRANTS IN PART and DENIES IN PART** the Metro Government's Motion to Dismiss.

### BACKGROUND

The following facts are set out in the Complaint and accepted as true for purposes of the Metro Government's Motion. *Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012).

Fletcher-Hope is an African American woman employed by the Metro Government, d/b/a Louisville Metro Department of Corrections (the "LMDC") as a corrections officer at the Community Corrections Center (the "CCC"). [DE 1-2 at ¶¶ 1, 10]. On June 28, 2017, Fletcher-Hope's assigned government truck and trailer were parked on the street in front of the CCC. *Id.* at ¶ 10. Fletcher-Hope observed Captain Goodlett outside with a K-9 dog, which was sniffing Fletcher-Hope's truck and trailer. *Id.* at ¶ 11. Captain Goodlett directed Fletcher-Hope to unlock the trailer to allow the dog to sniff inside. *Id.* The dog did not find any drugs or contraband in the trailer or on nearby inmates who were cutting grass outside of the CCC. *Id.* at ¶ 12.

Captain Goodlett then ordered the K-9 dog to sniff Fletcher-Hope. *Id.* at ¶ 13. The dog sniffed Fletcher-Hope as she stood on the sidewalk on Chestnut Street in front of other officers, the inmates, and the public. *Id.* Fletcher-Hope has been "terrified" of dogs since she was seven years old, when she was attacked by a dog that left her with scars. *Id.* at ¶ 14. Captain Goodlett yelled at Fletcher-Hope as the dog searched her, and in total the search lasted more than one hour. *Id.* at ¶¶ 15–16. No drugs or contraband were found. *Id.* at ¶ 16.

Fletcher-Hope claims that she was traumatized by the search and continues to suffer emotional injury that requires counseling and necessitates time away from her employment. *Id.* at ¶ 17. Fletcher-Hope filed a union grievance, which the LMDC denied. *Id.* at ¶ 18. Fletcher-Hope then filed a Charge of Discrimination with the Kentucky Commission on Human Rights alleging discrimination because of her race, gender, and age, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. *Id.* at ¶ 19. On May 9, 2018, Fletcher-Hope received an Equal Employment Opportunity Commission ("EEOC") Notice of Right to Sue, which indicated that the EEOC had terminated its processing of Fletcher-Hope's charge and that she had the right to sue in federal or state court. *Id.* at ¶ 20.

Fletcher-Hope timely filed suit in Jefferson County Circuit Court alleging sexual harassment under KRS § 344.010, *et seq.* (Count One), retaliation under KRS § 344.010, *et seq.* (Count Two), racial discrimination under KRS § 344.010, *et seq.* (Count Three), violation of Fletcher-Hope's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and Section 10 of the Kentucky Constitution (Count Four), assault and battery (Count Five), age discrimination under KRS § 344.010, *et seq.* (Count Six), gender discrimination under KRS § 344.010, *et seq.* (Count Seven), negligent supervision (Count Eight), and defamation (Count Nine). *Id.* at ¶¶ 21–83. The Metro Government moves to dismiss Fletcher-Hope's claims against it under Federal Rule of Civil Procedure 12(b)(6). [DE 5]. Fletcher-Hope did not file a response and the time for doing so has expired.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim[s] made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

**DISCUSSION**

**A. Federal Claim**

Fletcher-Hope brings one federal claim against the Metro Government. In Count Four, Fletcher-Hope alleges that the Metro Government violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution when the Metro Government's employees "wrongfully, and without probable cause, illegally detained and searched" her, "effectively arrest[ing] her." [DE 1-2 at ¶ 45]. Fletcher-Hope seeks damages for this alleged violation under 28 U.S.C. § 1983. *Id.* at ¶ 84. The Metro Government responds that Fletcher-Hope cannot base a Section 1983 claim on the conduct of its employees because *respondeat superior* is not an available theory of recovery under Section 1983. [DE 5-1 at 47–47]. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions."). Instead, a municipality is liable under Section 1983 only if the challenged conduct

4

occurs pursuant to a municipality's "official policy," such that the municipality's promulgation or adoption of the policy can be said to have "cause[d]" one of its employees to violate the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–92 (1978).

To prevail on a Section 1983 claim against a governmental entity under the Fourth Amendment, the plaintiff must show (1) that she suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. To properly assert a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Pleading standards are interpreted strictly for plaintiffs seeking to impose municipal liability under Section 1983. *Hutchison v. Metro. Gov't of Nashville & Davidson, Cty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010); *see also Howard v. City of Girard*, 346 F. App'x 49, 51 (6th Cir. 2009).

In this case, Fletcher-Hope fails to adequately allege a *Monell* claim. First, Fletcher-Hope does not assert the existence of an illegal official policy or legislative enactment. Instead, she merely notes that the Metro Government is "responsible for supervision and training of the members of the Departments of Corrections, as well as for creating and promulgating policies and procedures, which its members are expected to follow." [DE 1-2 at ¶ 2]. This, while true, does not create governmental liability. In her Complaint, Fletcher-Hope was required to "describe what

the official custom or policy was and describe how it was violated." *Kustes v. Lexington-Fayette Urban Cty. Gov't*, No. CIV.A. 5:12-323, 2013 WL 4776343, at *5 (E.D. Ky. Sept. 3, 2013); *see also 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Twombly*, 550 U.S. at 558) (noting that requiring a plaintiff to state more than the legal requirements of a cause of action in her complaint "prevents plaintiffs from launching a case into discovery—and from brandishing the threat of discovery during settlement negotiations—'when there is no reasonable likelihood that [they] can construct a claim from the events related in the complaint.'"). Because Fletcher-Hope's Complaint merely restates the legal requirements for a Section 1983 claim against a county, her *Monell* claim cannot proceed on an official-policy or legislative-enactment theory.

Second, Fletcher-Hope does not sufficiently allege that an official with final decision-making authority ratified the illegal actions. "Ratification of a subordinate's action requires more than acquiescence—it requires affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988)). Fletcher-Hope only states that "Defendants, through their officers, managing agents and/or supervisors, authorized, condoned and/or ratified the unlawful conduct of all of the other Defendants named in this action." [DE 1-2 at ¶ 49]. But she does not, for example, assert that the officers' actions were "appealed to and affirmed by a[] [Metro] official." *Arendale v. City of Memphis*, 519 F.3d 587, 602 (6th Cir. 2008). Nor does she assert that the Metro Government ruled in the officers' favor following a formal investigation. *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118–19 (6th Cir. 1994). Thus, Fletcher-Hope's mere assertion that the Metro Government ratified the officers' behavior, without more, is insufficient to proceed on a ratification theory.

Third, Fletcher-Hope does not allege the existence of a policy of inadequate training or supervision. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. . . . [A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Connick*, 563 U.S. at 61 (alteration omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). For this type of *Monell* claim, the municipal liability arises from the history of misconduct that created "notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478; *see also D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014) (holding that a county's knowledge of only three prior instances could not establish notice of habitually unconstitutional conduct in support of a failure-to-train claim); *but cf. Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989) (holding that the plaintiff sufficiently pleaded failure to train because the plaintiff cited "at least 14 other paraplegics had received similar" treatment as the plaintiff). As a result, to prevail on such a theory, a plaintiff must plead "(1) a clear and persistent pattern of illegal activity, (2) which the City knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the City's custom was the cause of the deprivation of her constitutional rights." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (citation and internal quotation marks omitted). Fletcher-Hope's Complaint only notes that the Metro Government is responsible for training its employees. [DE 1-2 at ¶ 2]. She makes no attempt to suggest the existence of even one other instance of prior unconstitutional conduct. Accordingly, Fletcher-Hope cannot maintain her claim under a failure-to-train theory.

Finally, Fletcher-Hope does not adequately allege the existence of a custom of tolerance of or acquiescence to federal rights violations. "[A] custom-of-tolerance claim requires a showing

7

that there was a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005); *Leach*, 891 F.2d at 1248). Although the Sixth Circuit has recognized municipal liability under Section 1983 for a city's failure to investigate allegations of unconstitutional conduct, *Leach*, 891 F.2d at 1241, municipal liability cannot be found solely from a single instance of failure to investigate, *Thomas*, 398 F.3d at 434; *see also Burgess*, 735 F.3d at 478 ("[Plaintiffs] simply have not demonstrated a pattern of inadequate investigation of similar claims as required."). Further, a plaintiff must show not only that the investigation was inadequate, but that the flaws in the investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the violation. *Doe v. Claiborne Cty. ex rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996). In this case, Fletcher-Hope's Complaint does not cite or refer to the Metro Government's failure to investigate this or any other incident. Accordingly, she cannot maintain her claim under a custom-of-intolerance theory.

For these reasons, even assuming all factual allegations in the Complaint to be true and making all reasonable inferences in Fletcher-Hope's favor, Fletcher-Hope still fails to state a valid *Monell* claim for which relief can be granted. Fletcher-Hope's Fourth and Fourteenth Amendment claims under Count Four against the Metro Government are therefore dismissed.

**B. State-law Claims**

Fletcher-Hope brings nine claims against the Metro Government arising under Kentucky law. [DE 1-2 at ¶¶ 21–83]. The Metro Government responds that it is immune from suit under the Eleventh Amendment and Kentucky law. [DE 5-1 at 46–47]. The Eleventh Amendment stipulates that a state and its agencies may not be sued in federal court, regardless of the relief

sought, unless the state has waived its immunity or Congress has overridden it. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Alden v. Maine*, 527 U.S. 706, 755 (1999); *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). However, Eleventh Amendment immunity "does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Alden*, 527 U.S. at 756. As "other governmental entities," "cities and counties do not enjoy Eleventh Amendment immunity." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994). Thus, while political subdivisions of the Commonwealth, including county governments, are entitled to sovereign immunity in Kentucky state court, *Yanero*, 65 S.W.3d at 517, 525, they are not protected by the Eleventh Amendment in federal court, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977). The Eleventh Amendment thus does not protect the Metro Government in this case.

But because Fletcher-Hope's remaining claims sound in state law, state immunity law also applies to those claims. *Shepherd v. Floyd Cty.*, 128 F. Supp. 3d 976, 977–78 (E.D. Ky. 2015) (citing *Smith v. Cty. of Lenawee*, 600 F.3d 686, 690 (6th Cir. 2010)). "Federal courts must apply state substantive law, including immunities, when dealing with supplemental state law claims in federal court." *Id.* at 980 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938)). "The Court must therefore apply Kentucky governmental immunity law to [Plaintiff's] state law claims." *Id.*

Under Kentucky law, political subdivisions of the Commonwealth, including county governments, are entitled to sovereign immunity. *Yanero*, 65 S.W.3d at 517, 525. The General Assembly addressed the immunity of such governments in KRS 67C.101(2)(e), providing that consolidated local governments "shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KRS 67C.101(2)(e); *see also Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 905, 907 (Ky. App. 2008)

9

("[Louisville] Metro Government is entitled to sovereign immunity."); *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) (finding that Lexington-Fayette Urban County Government was immune from suit). Thus, absent an explicit statutory waiver, the Metro Government is entitled to immunity. *Jewish Hosp. Healthcare Servs., Inc.*, 270 S.W.3d at 907.

Counts One, Two, Three, Six, and Seven arise under KRS § 344, also known as the Kentucky Civil Rights Act ("KCRA"), which outlaws discriminatory acts and establishes the Kentucky Human Rights Commission. *See* KRS §§ 344.120, 344.150. Kentucky has waived immunity for KCRA claims.[1] *Ivey v. McCreary Cty. Fiscal Court*, 939 F. Supp. 2d 762, 765 (E.D. Ky. 2013); *Dep't of Corr. v. Furr*, 23 S.W.3d 615, 616–18 (Ky. 2000) ("In this case, we address the single issue of whether the Commonwealth of Kentucky has waived sovereign immunity for claims brought under the Kentucky Civil Rights Act. . . . We hold that it has and affirm the Court of Appeals."). Accordingly, sovereign immunity has been waived by the Kentucky Legislature and does not shield the Metro Government from Fletcher-Hope's state law claims under KRS § 344. The Metro Government's Motion to Dismiss is therefore denied as to Counts One, Two, Three, Six, and Seven.

Count Four arises under the Fourth and Fourteenth Amendments to the U.S. Constitution (addressed above) and Section 10 of the Kentucky Constitution. The Supreme Court of Kentucky has explicitly rejected the notion that violations of the Kentucky Constitution give rise to a claim

---

[1] Kentucky has not waived Eleventh Amendment immunity in federal court for KCRA claims. *See Jackson v. Murray States Univ.*, 834 F. Supp. 2d 609, 613 (W.D. Ky. 2011) (citing *Mosier v. Kentucky*, 640 F. Supp. 2d 875, 879 (E.D. Ky. 2009)). But as noted above, the Court must consider immunity under both the Eleventh Amendment and Kentucky law. *Shepherd*, 128 F. Supp. 3d at 977–78. Because the Eleventh Amendment does not protect the Metro Government, *Hess*, 513 U.S. at 47, and Kentucky-law immunity, which does normally protect the Metro Government, has been waived for KCRA claims, *Shepherd*, 128 F. Supp. 3d at 977–78, it is Kentucky law, not the Eleventh Amendment, that decides immunity in this case.

for damages. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 533–34 (Ky. 2011). Accordingly, Count Four is dismissed.

Finally, Counts Five (assault and battery), Eight (negligent supervision), and Nine (defamation) arise under Kentucky tort law. The doctrine of sovereign immunity extends to tort claims. *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978) (citing *Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963); *All-Am. Movers, Inc. v. Kentucky ex rel. Hancock*, 552 S.W.2d 679 (Ky. Ct. App. 1977)). The Kentucky General Assembly has never expressly stated or otherwise suggested that it intended to waive sovereign immunity for tort claims against the government. Faced with such claims, courts have found that no waiver exists. *See, e.g.*, *Yanero*, 65 S.W.3d at 526 (noting that governmental subdivisions' immunity is grounded in the Kentucky Constitution and thus not waived); *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-CV-844-DJH, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016) (dismissing a defamation claim under Kentucky law because sovereign immunity had not been waived). Accordingly, the Metro Government is immune from Counts Five, Eight, and Nine, and those Counts are dismissed.

## CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that Metro Government's Motion to Dismiss [DE 5] is **GRANTED IN PART and DENIED IN PART**.

(1) The Metro Government's Motion is **GRANTED** as to Counts Four, Five, Eight, and Nine, and those Counts are **DISMISSED** as to the Metro Government;

(2) The Metro Government's Motion is **DENIED** as to Counts One, Two, Three, Six, and Seven; and

(3) Pursuant to 28 U.S.C. 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate

Judge Regina S. Edwards for resolution of all litigation planning issues, a scheduling conference, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Edwards is further authorized to conduct a settlement conference in this matter at any time. A separate order scheduling the Rule 16 Conference will be issued by the Chambers of United States Magistrate Judge Edwards. Pursuant to Fed. R. Civ. P. 16(b)(2), the Court finds that good cause existed to extend the issuance of a scheduling order to permit the Court to address the Metro Government's Motion to Dismiss.

Cc: Counsel of record