UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CYNTHIA FLETCHER-HOPE,     Plaintiff

v.     Civil Action No. 3:18-cv-00469-RGJ-RSE

LOUISVILLE METRO GOVERNMENT, et al.,     Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Louisville Metro Government, Darrell Goodlett, Timothy Huber, and Kenneth Bennett ("Defendants") move for summary judgment (the "Motion"). [DE 33]. Plaintiff, Cynthia Fletcher-Hope ("Fletcher-Hope") did not respond, and no reply was filed. Defendants also move to close briefing and submit the Motion for ruling. [DE 34]. For the reasons below, Defendants' Motions [DE 33, 34] are **GRANTED**.

### I. Factual Background

Fletcher-Hope is an African American woman employed by the Metro Government, d/b/a Louisville Metro Department of Corrections ("LMDC") as a corrections officer at the Community Corrections Center ("CCC"). [DE 1-2, ¶¶ 1, 10]. On June 28, 2017, Fletcher-Hope parked her assigned government truck and trailer on the street in front of the CCC. [*Id.*, ¶ 10]. Defendants allege that the same day, Goodlett, Huber, and Bennett, who were all correction officers employed by LMDC, were working with Michael Davis, the owner of TLC K-9 Services, LLC, and Davis' canine, Oakley. [DE 33-1, at 117]. They were searching for contraband in the CCC facility "as a 'tryout' for whether LMDC would like to contract with the company for future K-9 detection services." [*Id.*].

Fletcher-Hope observed Defendants and Davis outside sniffing Fletcher-Hope's assigned truck and trailer with a canine. [*Id.*, ¶ 11]. She approached the truck, and Goodlett directed Fletcher-Hope to unlock the trailer to allow the canine to sniff inside, which she did. [*Id.*]. Fletcher-Hope alleges that the canine did not find any drugs or contraband in the trailer. [*Id.*, ¶ 12]. Yet Defendants allege that the canine alerted on the truck's door handle and on a removable container inside the truck. [DE 33-1 at 117]. They searched the removable container and believed it to contain syntenic marijuana residue. [*Id.*].

Goodlett then ordered the canine to sniff Fletcher-Hope. [*Id.*, ¶ 13]. The canine sniffed Fletcher-Hope as she stood on the sidewalk in front of other officers, the inmates, and the public. [*Id.*]. Fletcher-Hope claims that she is "terrified" of dogs because she was attacked by a dog at the age of seven. [*Id.*, ¶ 14]. She also alleges that Goodlett yelled at her as the canine searched her, and in total the search lasted about one hour. [*Id.*, ¶¶ 15–16]. No drugs or contraband were found on her person. [*Id.*, ¶ 16]. Fletcher-Hope claims that she was traumatized by the search. [*Id.*, ¶ 17]. Defendants assert that "[s]he took sick leave for the next 30 to 40 days [but] has since returned to work and continues to work as a road crew officer today." [DE 33-1 at 118].

Fletcher-Hope timely sued in Jefferson County Circuit Court ("Complaint") alleging sexual harassment under KRS § 344.010, *et seq.* (Count One), retaliation under KRS § 344.010, *et seq.* (Count Two), racial discrimination under KRS § 344.010, *et seq.* (Count Three), violation of Fletcher-Hope's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and Section 10 of the Kentucky Constitution (Count Four), assault and battery (Count Five), age discrimination under KRS § 344.010, *et seq.* (Count Six), gender discrimination under KRS § 344.010, *et seq.* (Count Seven), negligent supervision (Count Eight), and defamation (Count Nine). [*Id.*, ¶¶ 21–83]. The Court dismissed counts Four, Five, Eight, and Nine against Metro

Government. [DE 15]. On November 20, 2019, Defendants moved for summary judgment under Federal Rule of Civil Procedure 56 on Fletcher-Hope's remaining claims. [DE 33]. The motion has been pending for over four months, and Fletcher-Hope has failed to respond.

**II.     Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact about an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of proving conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" if proof of that fact could establish or refute an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

Once the moving party carries the initial burden of proving that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. 2505. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S. Ct. 2505 (citations omitted).

As a result, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505.

### III. Discussion

Fletcher-Hope did not respond to the Motion. Failure to defend her claims in response to summary judgment is a sufficient basis for the Court to dismiss her claims. *See Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). That said, these claims fail on the merits and Defendants' are entitled to summary judgment.

*1. Sexual Harassment Claim*

Fletcher-Hope alleges that Defendants "engaged in a pattern and practice of unlawful sex discrimination by subjecting Plaintiff to unwelcome sexual harassment," and that the conduct "created an intimidating, oppressive, hostile and offense work environment which interfered with Plaintiff's emotional well-being." [DE 33-1, at 119 (quoting DE 1-2, ¶¶ 22, 23)].

"'A sexual harassment claim brought under the Kentucky Civil Rights Act ('KCRA') is to be analyzed in the same manner as a claim brought under Title VII, its federal counterpart.'" *Gray v. Kenton Cty.*, 467 S.W.3d 801, 805 (Ky. App. 2014) (quoting *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005)). To make out a "a prima facie case of a hostile work environment based on sex, a plaintiff must show that:

> (1) she is a member of a protected class,
> (2) she was subjected to unwelcome sexual harassment,
> (3) the harassment was based on her sex,
> (4) the harassment created a hostile work environment, and that
> (5) the employer is vicariously liable."

*Id.*; *see also Perry v. AutoZoners, LLC*, 954 F. Supp. 2d 599, 609 (W.D. Ky. 2013).

Defendants argue no evidence suggests that the incident "has anything to do with [Fletcher-Hope's] gender as opposed to the purpose of seeking out contraband in order to prevent it from entering the facility," or that the incident unreasonably interfered with her work. [DE 33-1, at 121].

There is no evidence that the alleged harassment, in this case the canine sniff of Fletcher-Hope's person, was based on Fletcher-Hope's gender. Thus, Fletcher-Hope fails to establish the third element of a prima facie claim of sexual harassment, and Defendants are entitled to summary judgment.

## 2. Retaliation and Race, Age, and Gender Discrimination Claims

Fletcher-Hope alleges four claims—retaliation, race discrimination, age discrimination, and gender discrimination—each of which requires proof that her employer took an adverse employment action against her to establish a prima facie case.[1] Defendants argue the Fletcher-Hope has offered no evidence to show, at a minimum, that she suffered any adverse employment action.

"An adverse employment action has been defined as a materially adverse change in the terms and conditions of [a plaintiff's] employment[, such as] a significant change in employment status, including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010).

---

[1] Retaliation: "A prima facie case of retaliation requires a plaintiff to demonstrate '(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004), *as modified on denial of reh'g* (May 20, 2004).

Race Discrimination: To prove her prima facie case, Fletcher-Hope must show: 1) that she is a member of a protected class; 2) that she was qualified for her job and performed it satisfactorily; 3) despite her qualifications and job performance that she suffered an adverse employment action; and 4) that she was treated less favorably than a similarly situated person outside her protected class. *Wilson v. Dana Corp.*, 210 F. Supp. 2d 867, 877 (W.D. Ky. 2002).

Age Discrimination: "[A] plaintiff can establish a prima facie case of age discrimination by proving that he or she: (1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which they were discharged, and (4) was replaced by a person outside the protected class." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005).

Gender Discrimination: To establish a prima facie case of gender discrimination, Fletcher-Hope must show that "(1) she was a member of a protected group; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) similarly situated males were treated more favorably." *The Bd. of Regents of N. Kentucky Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky. 2016).

In her deposition Fletcher-Hope admits that she was neither reassigned nor constructively fired. [DE 33-1 at 122; DE 33-2 at 137:21–38:17]. Additionally, Fletcher-Hope returned to work and continues to work in the same role as before this incident. [*Id.* at 118]. There is no evidence in the record of any adverse employment action taken against Fletcher-Hope. Even taking the facts in the light most favorable to Fletcher-Hope, there are no facts that create a genuine dispute about whether she suffered an adverse employment action. Thus, Fletcher-Hope fails to present prima facie claims of retaliation and race, age and gender discrimination. Summary judgment is thus granted in favor of Defendants.

3. *Claims of False Arrest, Illegal Detention, and Illegal Search*[2]

Fletcher-Hope alleges that the June 28, 2017 incident violated her Fourth Amendment rights because the canine sniff constituted an illegal search and she was falsely arrested and detained. [DE 1-2, ¶¶ 44–49].

a. <u>Illegal Search</u>

Fletcher-Hope alleges that the canine sniff constituted an illegal search of person. Yet courts have repeatedly found "that a canine sniff is not a search within the meaning of the Fourth Amendment." *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998); *see also United States v. Perez*, 440 F.3d 363, 375 (6th Cir. 2006) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)) ("the Supreme Court made clear that use of a well-trained drug dog does not in itself implicate any legitimate privacy interests"). Thus, Fletcher-Hope's claim for illegal search fails as a matter of law and summary judgment is granted in favor of Defendants.

---

[2] These claims would likely also be dismissed under qualified immunity, which the Court finds applies to the actions of the officers below. That said, the Defendants have not raised that as a defense to these actions.

b. False Arrest

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (internal citation omitted). An essential element of the false arrest claim is that the plaintiff was under arrest. *See Owens v. Carpenay,* 939 F. Supp. 558, 568 (E.D. Mich. 1996) ("because Plaintiff was not under arrest prior to Defendant Carpenay's discovery of the handgun in Plaintiff's automobile, it follows that Plaintiff was not arrested without probable cause. Thus, Plaintiff's claim of false arrest must fail."). Fletcher-Hope was not under arrest but alleges that the canine sniff, which lasted "about an hour" was effectively an arrest. [DE 1-2, ¶¶ 16, 44–49]. She alleges that there was no probable cause to arrest her and thus she was illegally detained and arrested in violation of her Fourth Amendment rights. [*Id.*, ¶¶ 44–49]. But there is no need to find probable cause. LMPD policy provides that staff may be searched for contraband at any time. [*See* DE 33-3, LMDC Departmental Policy, Index Number 03-2.25, Contraband Control, Section IV(B)(2) ("All inmates, staff, visitors, volunteers, etc. are subject to search at any time for the control of contraband….")]. There is thus no need to find reasonable suspicion for an investigatory stop or probable cause for a search. *See Bell v. Wolfish*, 441 U.S. 520, 560, 99 S. Ct. 1861, 1885, 60 L. Ed. 2d 447 (1979) (upholding policy allowing inmates to be strip searched on less than probable cause because of the unique nature of prisons and the reduced expectation of privacy of individuals inside prison); *Dufrin v. Spreen*, 712 F.2d 1084, 1088 (6th Cir. 1983) (same).

Still, an investigatory stop can transform into an illegal detention or arrest "[w]hen police actions go beyond checking out the suspicious circumstances that led to the original stop." *United States v. Obasa*, 15 F.3d 603, 607 (6th Cir. 1994). In making this determination, "Courts consider the length of the detention, the manner in which it is conducted, and the degree of force used in

determining whether an investigative stop is reasonably related to the basis for the original intrusion." *Brown v. Lewis*, 779 F.3d 401, 414 (6th Cir. 2015) (internal citation and quotation omitted).

Simply conducting a canine sniff would not transform this situation into an effective arrest or illegal detention because "the canine narcotics sniff is directly related to investigating this suspicion," here whether there was contraband. *United States v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) (finding that conducting a canine sniff did not transform an investigatory stop into a seizure under the Fourth Amendment). That the entire incident lasted "about an hour" also does not transform the investigatory stop into an illegal detention or effective arrest. *United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir.2002) (finding a Terry detention reasonable where the entire investigation lasted less than one hour with approximately thirty-five minutes spent waiting for the canine unit to arrive). There are no facts of record that establish a genuine issue of material fact that Fletcher-Hope was ever searched, detained, or arrested in violation of her Fourth Amendment Rights. Summary judgment is granted in favor of Defendants on this claim.

### 4. Assault and Battery Claims

Fletcher-Hope alleges that the dog handler "rushed toward Plaintiff, assaulting and battering her by ordering the canine under his control to come into physical contact with the Plaintiff. [He] also physically touched Plaintiff's body on several occasions." [DE 1-2, ¶ 51]. She alleges that "[t]he other named Defendants participated in this assault and battery by failing to intervene as they witnessed a crime and tort being perpetrated." [*Id.*]. Defendants assert that no assault or battery occurred, but if it did they are entitled to qualified immunity. [DE 33-1, at 125–26]. The Court need not decide whether an assault or battery occurred because Defendants are entitled to a defense of qualified immunity.

9

"Qualified official immunity shields the officers from personal liability for (1) discretionary acts (2) performed in good faith (3) within their scope of authority." *Walker v. City of Lebanon, Ky.,* No. 3:12-CV-855-H, 2013 WL 6185402, at *11 (W.D. Ky. Nov. 25, 2013). "In Kentucky, a discretionary act is one that 'require[s] the exercise of reason in the adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued.'" *Id.* (quoting *Upchurch v. Clinton Cnty.*, 330 S.W.2d 428, 430 (Ky. 1959)). The "decision to administer force in an effort to maintain order and control is a discretionary act." *Id.* Thus, to establish that qualified immunity does not apply, Fletcher-Hope must establish that the officers did not act in good faith. "According to Kentucky law, bad faith can either be objective, insofar as the official 'knew or reasonably should have known that the action he took . . . would violate the constitutional rights of the plaintiff', or subjective, insofar as the official 'took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" *Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602, at *8 (W.D. Ky. Jan. 17, 2013). "As with federal qualified immunity, it is [Plaintiff's] burden to establish that the officers' actions were not performed in good faith." *Id.* (quoting *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir.2011)).

Fletcher-Hope has not met her burden of showing that the officers' actions were taken in bad faith. She has failed to respond to the summary judgment motion, and the facts put forth in the Complaint do not demonstrate that any officer was acting in bad faith. The Court also found above no violation of Fletcher-Hope's constitutional rights. Thus, Fletcher-Hope has failed to meet her burden, and the Defendants are entitled to a qualified immunity defense. *See Windham v. Kitchens,* No. 5:02-CV-61, 2007 WL 1035145, at *4 (W.D. Ky. Mar. 30, 2007) (where plaintiff failed to put forth evidence that officer acted in bad faith, officer was "entitled to qualified immunity as a matter of law because the Plaintiff has not met her burden.").

### 5. *Negligent Supervision*

Fletcher-Hope alleges that Defendants committed negligent supervision by

> failing to protect Plaintiff from the continuing harassment and other offensive conduct of the named Defendants described herein, and, further, by unjust discipline, reassignment, and degrading derogatory comments and constructively firing Plaintiff solely because she had reported harassment; all in retaliation for Plaintiffs reporting harassment. Defendants abused their special position as Plaintiffs superiors which vested them with substantial power to control her work environment and to damage her interests and wellbeing.

[DE 1-2, ¶ 69].

The Court has found that Defendants are entitled to qualified immunity for the incident that occurred on June 28, 2017. That said, this claim appears to encompass actions that occurred after the canine incident, such as "unjust discipline, reassignment, and degrading derogatory comments and constructively firing Plaintiff solely because she had reported harassment." [DE1-2, ¶ 69]. These added allegations are directly contradicted by Fletcher-Hope's testimony. [DE 33-1 at 122; DE 33-2 at 137:21–38:17]. As a result, Fletcher-Hope has failed to show a material dispute that Defendants were not negligent in their supervision, thus her negligent supervision claim fails as a matter of law.

### 6. *Defamation Claims*

Fletcher-Hope alleges that the Defendants defamed her by stating, while knowing it to be false, that she "had been a difficult and inadequate employee." [DE 1-2, ¶ 80]. Defendants assert that Fletcher-Hope's claim should be dismissed because "she has no admissible evidence of any defamatory statements made by any of the individual defendants." [DE 33-1 at 128].

"The requisite elements for a defamation claim are: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of

11

special harm or the existence of special harm caused by the publication." *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 281–82 (Ky. 2014), *as corrected* (Apr. 7, 2015) (internal citations and quotations omitted). Fletcher-Hope states during her deposition testimony that she has no proof that defamatory statements were made by anyone, including any of the Defendants. [DE 33-1 at 128–131 (quoting DE 33-2 at 146:3–147:11)]. So even taking the evidence in the light most favorable to her, Fletcher-Hope fails to establish a genuine issue of material fact that defamatory statements were made. Thus, her claim for defamation fails and summary judgment is granted in favor of Defendants.

## IV. Conclusion

For the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Defendants' Motion for Summary Judgment [DE 33] and Motion to Close Briefing and Submit Motion for Summary Judgment for Ruling [DE 34] are **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. The Court will enter a separate Judgment consistent with this Memorandum Opinion & Order.